J-S55045-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| OSCAR LOZANO GARCIA, | : | |
| Appellant | : | No. 1468 MDA 2016 |

Appeal from the Judgment of Sentence August 5, 2016
in the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0002621-2014

BEFORE:    DUBOW, RANSOM, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED OCTOBER 11, 2017**

Oscar Lozano Garcia (Appellant) appeals from the sentence of life imprisonment imposed following his conviction for first-degree murder. We affirm.

The trial court aptly summarized the relevant factual and procedural history of this matter as follows.

> On September 22nd, 2014, the District Attorney of Luzerne County filed a criminal information charging [Appellant] with one count of criminal homicide, pursuant to 18 Pa.C.S. § 2501(a), for the murder of Maria Brea, which occurred on December 14th, 2012. [Appellant] was a citizen of Mexico who was working and residing in Pennsylvania at the time of the crime. Prior to her murder, Brea and [Appellant] lived together as boyfriend and girlfriend at [Brea's] apartment, located at 343 East Diamond Avenue, Apartment 2B, City of Hazleton. Brea and [Appellant] also lived with Brea's two minor children[.]
>
> After her family discovered that she was missing, Brea's family contacted the police. The Pennsylvania State Police executed a search warrant at Brea's residence on December 18th,

---

*Retired Senior Judge assigned to the Superior Court.

2012. During their search, Trooper John R. Corrigan and Corporal David Andreuzzi discovered a small storage room that had a small closet and a second door which led to an attic area. The officers noticed the attic door was padlocked, and that duct tape had been placed along the left side and top of the door, and clear tape had been placed along the right side of the door. They also noticed that tissue paper was stuffed into the opening at the bottom of the attic door. Once they removed the barriers to accessing the attic, the officers observed a body wrapped in a plastic sheet laying supine on the old tar roof portion of the attic. Subsequently, a second search warrant was obtained to allow for a homicide investigation. The body was taken to Wilkes-Barre General Hospital, where an autopsy was performed and the body was identified as [] Brea. The cause of death was determined to be asphyxiation by strangulation, and the manner of death was ruled a homicide.

Immediately following the December 14th, 2012 murder of [] Brea, [Appellant] fled from Pennsylvania to Mexico with an acquaintance, Juan Cervantes. [Appellant] was later arrested on the Commonwealth's Provisional Arrest Warrant, incarcerated based on that warrant, and permitted to challenge the extradition. The Mexican court granted the Commonwealth's request for extradition, and [Appellant] was subsequently returned to Luzerne County, Pennsylvania by the United States Marshal Service. On September 23rd, 2014, [Appellant] was arraigned, entered a plea of not guilty, and requested a jury trial.

Counsel for [Appellant] submitted a motion to transcribe discovery to Spanish, requesting that the court enter an order stating that all discovery from the Commonwealth be transcribed to Spanish. The documents were transcribed to Spanish at the expense of the Public Defender's Office on behalf of its client.

Trial in this matter was continued at least twice at the request of counsel for the defense. On June 27th, 2016, after an extensive colloquy by [the trial] court, translated into Spanish for [Appellant] through two court interpreters, [Appellant] knowingly, intelligently, and voluntarily waived his right to a jury trial and elected to be tried by [the trial court]. A bench trial in the above-captioned matter took place from June 27th, 2016 to June 30th, 2016. Following the full bench trial, on July 1st, 2016, [the trial]

court found [Appellant] guilty of murder in the first degree. Sentencing took place on August 5th, 2016[.]

Trial Court Opinion, 2/23/2017, at 1-3 (footnotes and unnecessary capitalization omitted). On August 30, 2016, Appellant timely filed a notice of appeal to this Court. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

On appeal, Appellant asks this Court to consider the following question: "whether the evidence presented by the Commonwealth was sufficient to sustain a conviction for murder in the first degree?" Appellant's Brief at 1.

A claim challenging the sufficiency of the evidence is a question of law. ***Commonwealth v. Widmer***, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000).

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of

a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Hecker***, 153 A.3d 1005, 1008 (Pa. Super. 2016) (citation omitted).

> There are three elements of first-degree murder: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill. As set forth in the third element, first-degree murder is an intentional killing, *i.e.*, a willful, deliberate and premeditated killing. Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death. The law does not require a lengthy period of premeditation; indeed, the design to kill can be formulated in a fraction of a second. Specific intent to kill as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. Whether the accused had formed the specific intent to kill is a question of fact to be determined by the jury.

***Commonwealth v. Jordan***, 65 A.3d 318, 323 (Pa. 2013) (internal citations and quotation marks omitted).

Instantly, Appellant contends that the evidence was insufficient to sustain his conviction because the Commonwealth (1) "failed to demonstrate that the body autopsied [in this matter] was the body of Maria Brea[]," (2) failed to prove beyond a reasonable doubt that Appellant was "responsible for the killing", and (3) failed to prove malice. Appellant's Brief at 13-18. The trial court found the evidence sufficient to support Appellant's conviction and addressed these arguments as follows.

> The Commonwealth presented evidence that the victim, Maria Brea, is dead. The Commonwealth presented credible testimony and forensic evidence establishing that it was [Appellant who] killed [] Brea. [Appellant] was the last person

seen with [] Brea [while she was] alive. [Appellant] had access to the plastic that was bound around her. Eleven of [Appellant's] finger prints were found on the tape that was wrapped around the plastic: fingerprints from the tape that secured her ankles, fingerprints from the tape that wrapped the plastic, and fingerprints from the tape that sealed the attic door. The DNA of [Appellant] was identified from [Brea's] hand scrapings post-mortem. Phone-tracking showed that [Appellant] was in possession of [] Brea's cell phone after her death. Co-workers of [Appellant] saw him with scratches and acting nervous, contrary to his usual calm demeanor. [Appellant] told his co-workers that he was in a fight and that the police were looking for him. [Appellant] fled to Mexico. The direct and circumstantial evidence was both credible and sufficient to find beyond a reasonable doubt that [Appellant] killed [] Brea.

The Commonwealth presented credible evidence that [Appellant] killed [] Brea with the requisite specific intent and legal malice. [Appellant] was aware that [] Brea was intent on ending their relationship, and [] Brea did end her relationship with [Appellant] just prior to her murder. Prior to [] Brea's death, [Appellant] both asked to bring home from work plastic sheeting and made arrangements to travel to Mexico. On the day of the murder, [Appellant] told [Brea] that he would leave after the children went to school, ensuring that there would be no immediate witnesses and the two would be alone. The method of [] Brea's death, manual strangulation, ensured [Brea's] silence in a daytime apartment setting with other residents likely to be within earshot. The Commonwealth established that deliberate acts were taken by [Appellant] following the initial altercation between [Appellant] and Brea to ensure Brea's death, including placing a sock in [] Brea's mouth, then a plastic grocery store bag over Brea's head, securing the bag with tape, and then proceeding to wrap Brea's body in a plastic sheet, which was subsequently wrapped in gray duct tape. Particular attention was paid to ensuring that [Brea's] air passages were blocked, and that the hands and feet were tightly bound, the hands with cordage and duct tape. The meticulous nature of the gagging, binding, and wrapping indicate[s] that, had the initial strangulation resulted in mere unconsciousness, a specific intent was formed by [Appellant] to kill [] Brea. These same bindings displayed a peculiar cruelty in their thoroughness, and a reckless indifference to the life and breath of [] Brea.

Trial Court Opinion, 2/23/2017, at 6-8 (footnotes omitted).

The record before us supports the court's findings. With respect to the first element, the Commonwealth introduced Brea's autopsy report and testimony of Gary Ross, the forensic pathologist who performed the autopsy, to establish that the body at issue was that of Brea. N.T., 6/27/2016, at 334-36. Dr. Ross identified photographs of Brea's body taken during his autopsy and the report was entered into evidence with a note that the body had been previously identified and was tagged as Brea. *Id.*

With respect to the second element, as the trial court noted, Appellant's fingerprints were discovered on the plastic and tape used to bind Brea.[1] His DNA was found in her body. The testimony of Brea's family established that he had access, means, and motive to commit the crime. N.T., 6/27/2016, at 51-168. Further, Appellant's coworkers testified that he did not show up to work as scheduled on the day of Brea's disappearance, that he abruptly quit his job citing "big troubles at home," and that he was uncharacteristically "anxious" and had a scratch near his eye. *Id.* at 171-72; 175-76; 185-89.

Finally, the method of death clearly indicates malice.

> In [**Commonwealth v. Pruitt**, 597 Pa. 307, 951 A.2d 307 (2008),] Pruitt admitted to breaking into the home of a 69-year-old woman, covering her mouth with a towel, tying it, removing

---

[1] Appellant in his brief sets forth a theory that he believes would explain the presence of his fingerprints on the duct tape removed from Brea; however, he did not testify at trial and this alternative theory was not argued to the trial court.

her clothing, tying her up, and leaving her there "while he went upstairs to look for money." 951 A.2d at 314. "When he came back downstairs with the victim's money, she was not moving." **Id.** The forensic pathologist testified that the victim's death was caused by "strangulation, most likely with the towel that was found around her neck." **Id.** Our Supreme Court held that the "evidence is sufficient to support the *mens rea* element of first-degree murder, *i.e.*, a specific intent to kill." **Id.**

Similarly, in [**Commonwealth v. Keaton**, 556 Pa. 442, 729 A.2d 529 (1999)], police found a partially decomposed body of the victim, a former girlfriend of Keaton's, in a basement of a house known for crack-cocaine activity. A "pair of tights was tied tightly around her neck as a ligature." 729 A.2d at 534. The autopsy revealed the victim had recently used alcohol and cocaine. Keaton admitted to having tied up the victim, "but claimed it was merely part of a 'sex game.'" **Id.** at 535. He also admitted to having left the victim unconscious and tied up in the basement while he left the house to obtain more drugs. Keaton claimed that the evidence was insufficient to sustain a first-degree murder conviction because he did not intentionally kill the victim. Our Supreme Court pointed out that "the act of tightening a strap around a person's neck, with enough force and violence to kill the victim, [is] sufficient to permit a finding of specific intent to kill." **Id.** at 537. Additionally, this Court took into account the fact that Keaton left the victim tied up "on the floor, unconscious in the pitch black of the basement." **Id.**

**Commonwealth v. Payne**, -- A.3d --, 2017 WL 3911803 at *6 (Pa. Super. 2017).

Here, the testimony established that the victim was meticulously gagged and bound. Dr. Ross opined that it was the combination of strangulation and restricting Brea's airways that caused her death, stating that "[j]ust because a compressive force was applied to the neck and hyoid fracture doesn't necessarily mean she would die instantaneously at that point. She may have been rendered unconscious. But placing the plastic bag over her head basically

obliterating any chance of any oxygen coming into her would certainly cause her death." N.T., 6/27/2016, at 366.

Additionally, it is well-established that "[a]ctions of the accused that occur before, during, **and** after are admissible as evidence to show malice. [E]vidence of acts to conceal a crime, such as disposing of the victim's body, are relevant to prove the accused's intent or state of mind." **Payne**, 2017 WL 3911803 at *6 (emphasis in original). Appellant's trip to Mexico may have been planned before the murder; however, it was reasonable for the trial court sitting as finder of fact to conclude that Appellant either planned the murder to coincide with the trip, or used the trip as an opportunity to commit the murder. Finally, the evidence also established that Appellant taunted Brea's family by laughing and telling them that he left Brea "at home" or "at the house" and indicating they should look for her. N.T., 6/27/2016, at 86-87; 103; 130.

Based on this evidence, we agree with the trial court that the Commonwealth met its burden of establishing Appellant's guilt beyond a reasonable doubt.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/11/2017